Green Valley Special Utility District v. City of Cibolo, Texas. Mr. Terrell. I'm Paul Terrell. I'm here on behalf of Green Valley Special Utility District. This case hinges on the interpretation of a federal statute governing loans to that statute is 7 U.S.C. 1926b. Section 1926b provides in mandatory language that the service provided or made available by the federally indebted utility, in this case, it's Green Valley, shall not be curtailed or limited by the encroachment of a city. This court has called that protected service area sacrosanct and said that 1926b must be liberally construed to protect both the borrowing utility and the federal government as lender. The district court below took the opposite approach. The district court narrowly construed the statute and did so in a way that harmed the borrower and effectively ceded service area to an encroaching city. That order dismissing Green Valley's complaint is error. It conflicts with the plain language of the statute. This court's precedent in North Alamo and Bear Creek and the policy underlying. You're saying if the phrase the service is ambiguous, then we should construe it in favor of the utility under North Alamo. That's the argument. That was what the district court said, and that's what an eighth circuit court. No. We're not saying that it's. Sorry, aren't you the utility? We are the utility. And I just said if the phrase the service is ambiguous, your argument is under North Alamo we construe it in favor of the utility. Why are you disagreeing with that? Okay. Maybe I'm confused about who you are. You're not confused. Okay. Let me address those points. I was just saying we didn't say that it was ambiguous, but understanding your question, if it is ambiguous, it should be construed in favor of the utility. That's the way I would think. So the answer to my question was, yes, that's your argument. At its extreme, you're saying it's not ambiguous and you win, okay. But if it is ambiguous, you still win. And that your argument? That is correct. That's liberal construed. We don't need liberal construction if the statute is clear. We don't need any construction. We just read it. Liberal construction comes up when we don't know what it means, right? It should be construed in favor of the borrower. I'm sorry. I think I'm finding it strange that you're arguing a point that you should agree with, so that makes me think I'm missing something here. I was not attempting to argue. I do agree with you that statute should be construed liberally. I'm not trying to talk us out of your position. You're doing a good job of talking us out of your position, but I don't think that's what you mean to do. Let me give you a few basic facts about Green Valley in this situation before turning directly to the statute and the cases. Green Valley is a governmental utility provider under Chapter 65 of the Texas Water Code. Green Valley operates as an integrated utility. It has both a public utility commission, that's the state agency that regulates water and wastewater utilities. The wastewater CCN was issued in 2005. The significance of that is under Chapter 13 of the Water Code, and it's specifically 13250, the holder of a CCN has an exclusive right to serve customers in that area, but also has a mandatory duty to serve customers and provide continuous and adequate service for those customers. What is the waste service? What does that consist of? Pardon me? What does the waste service consist of? What is that? Service under Texas law, which this court has held that making service available under a CCN is equivalent to making service available under 1926B. I understand that argument. I'm really asking, you have water and there's also waste. What is the waste service? I'm not focused on the word service. I just don't understand what you mean, what's meant by waste. Is it the wastewater system? Yes. Let me put it in very simple terms. You're picking up garbage, you're cleaning water. Water comes to a faucet. Until it comes out of the faucet, it's part of the water system. It comes out of the water system, drops down into the drain, is collected, and then ultimately either disposed with the septic system or a conventional wastewater treatment system. So it's the integration of the water side and then the collection of the wastewater and then ultimate treatment and disposal of that. Does that make sense? So all water that's coming out ultimately is wastewater, whether it's coming out of a toilet or coming out of a sink or coming out of a bathtub. That's correct. All right, back to just some basic facts. Green Valley is indebted to the federal government under a USDA loan. That loan is for a water project and is secured by water assets and the city of Cibolo recently annexed some territory that's within Green Valley's CCN and the city doesn't serve any customers but is attempting to by a process called single certification. Green Valley sued under 1926B to stop this process. And what services is the city seeking to provide? Wastewater. It is not seeking to provide water. The city's argument is... But the loan is only for the water. That's correct. That's correct. And this gets to the basic interpretation issue. The district court below said, well, water was all that was funded by the loan and so it's the only service that's protected by the loan. The problem with that, there's several problems actually, but the first one is that's just not what the statute says. The statute doesn't... Of course, and obviously we look first at what the statute says, and you're entitled to spend whatever time you want arguing that, but let's move on just to ask why would it make sense for the statute to be read to keep the city from encroaching on services that aren't covered by the loan? It's all about the purpose of 1926B. So let me just say one word about the plain language, which is there's no limitation on the protection in 1926B tying it to the funding, but let me go directly to the purpose, which is that's to protect the federally indebted borrower. The federally indebted borrower has a service area. That service area has customers. The federal government as the hurts the borrower, undermines the ultimate ability of the borrower to pay back the loan to the federal government. But that's the issue, is paying it back, and so if the loan is adequately secured by just the water services, for example, if I own two houses and I have a mortgage on House A but not on House B, but the mortgage on House A is protected by the value of House A, why should we care about House B? I mean, so here, why should the government, why should we construe a statute to have the government concerned about the whole utility when the utility is, the loan is protected by the utility's proceeds from the water services? Two reasons. One is Congress didn't limit consideration of what's protected to a court analyzing, for instance, whether there's adequate security. It just said the service. It didn't try to tie it to funding. It didn't try to tie it to the security of the loan. It didn't do any of that. And the policy that underlies it, which is addressed in a Fourth Circuit case, the BellArthur case, specifically goes into this issue and says, well, just because the, because there was an argument from the city saying, well, you're adequately secured and you used the assets, or excuse me, loan proceeds to fund this project, but we're not dealing with that. We're dealing with this project over here, so we ought to be able to take this service territory over here. The Fourth Circuit said, no, you don't look at how the proceeds of the loan were used. What you look at is the policy underlying it, which is protection. Wasn't that dicta because they ultimately found the Ironwood wasn't being provided water service? It was not dicta. That's a separate part of the particular case that the court specifically held that we do not look at the use of the loan proceeds to determine whether you can take one part of the service area versus another. The court specifically rejected that idea. All the same service, and then they ultimately held Ironwood wasn't covered anyway, so. Yeah, but again, the importance for this case wasn't the service made available part. It was, can you look to the use of the loan proceeds to figure out whether some of the service area is protected and some of the service area is not protected? That isn't really our question about the service area. It's the service itself. But that ties back. The city of Cibolo isn't saying it can provide water in this city. They're not arguing that. What's important about how the Fourth Circuit reached its determination is the policy question. Again, the policy question is just critical to determining how to construe. Let me turn to that real quickly because I want to mention how this court has looked at that specific issue in the past. Mentioned two cases. One of them is North Alamo, and I'm going to quote directly, the service area of a federally indebted water association is sacrosanct, and that the statute should be liberally interpreted to protect the federally indebted rural water associations from municipal encroachment. Now, in Bear Creek, which is another Fifth Circuit case, this court clearly identified, and I'm quoting now directly, congressional mandate that local governments not encroach upon the services, it's in the plural, provided by a federally indebted association. That's Bear Creek at 1059. Now, Bear Creek is an interesting case because 1926B does not prohibit condemnation. It doesn't explicitly prohibit condemnation. This court, and in Judge Jones' opinion, she looks at this question, well, the statute doesn't explicitly address a city condemning. And the city, of course, was arguing, well, it's not in the statute, so we ought to be allowed to do it. Judge Jones said, no, you're trying to skim the cream. You're trying to take the best customers from this rural utility, take that best service area. That hurts the borrower, and that's who's protected by the statute. Let me ask you a question. Do we have any guidance on what similar service means? Similar service, if you read it in the context of the statute, all it means is it's just talking about the service that's being protected by the statute. Well, I'm saying, though, the statute goes forward and talks about the protection that's given to the government for its loan, and it said the service provided or made available shall not be curtailed or limited. That's water. By any inclusion of the area, served by such association, by the granting of any what? Granting of any private franchise for it. Water goes through the faucet and goes back to cleaning. Why isn't that a similar service that would be directly prohibited by the statute? When they're talking about similar service in the context of that statute, they're only talking about... That's a friendly question. Pardon me? That's a friendly question. I'm talking about the breadth of the prohibition here. It said the service provided or made available to the association, we know what that is. It says water, and they say, well, they want to come in with a different service soon, but the statute says that you have the exclusivity for this service and a similar service. Agreed, and that's why when you've got something hand in glove, like water and wastewater, those go together. I was kind of obliquely addressing the argument that they made in question, as usual, was obscure. You referred to the Fourth Circuit. What do you do with the Eighth Circuit case in the city of Lebanon matter? Short answer is don't follow it, but I'll give you several reasons why you shouldn't follow it. I do want to circle back to the policies, but the short answer to why you don't follow it is they just stand the statutory purpose of 1926B on its head. 1926B is about protecting the federally indebted borrower. Let me just read a couple of comments the city of Lebanon made. First of all, they said that protecting that borrower's customers is irrelevant to maintaining the necessary economies of scale. That's just nonsense. I mean, the more customers, the more users, the greater the economies of scale, the more revenues per customer, the lower cost per user. That's exactly the purpose of 1926B. Another thing that court said is that a city might be perhaps better situated to provide service. That's not the congressional policy. That's the court essentially saying we're looking at this policy and we don't agree with it, and the Eighth Circuit just went off the rails on that. That's not the analysis that this court has used in Fifth Circuit cases, and it's not what should be followed here. All right. Thank you, Mr. Terrell. Your initial time has expired and you've saved time for rebuttal. Thank you. Mr. Jentleman. May it please the court. The correct statutory interpretation of 1926B is to apply its protections against competition to the federally funded service and to do so robustly and fully as this court laid out in North Alamo versus the city of San Juan. The district court below applied the correct rules of statutory construction looking at this statute to conclude that it was the federal funding of the service that was the required definition following the Eighth Circuit decision in the city of Lebanon case. In spite of the arguments by the appellant that prior precedents of this court or mandates from this court compel their result, there is no precedent. There can't be a... What do you do with the idea that if the service is an unclear phrase, we've already said it should be liberally construed, and liberal construction to me means, you know, you go in the favor of whoever they're liberally construed in favor of, which is the utility. So if these services are ambiguous, even though your opponent didn't want to accept this, to me it makes sense. If the service is ambiguous and we've said liberal construction, then we have to give it a construction that favors the utility. The statement in San Juan and these other cases about liberal construction to protect the Rural Water Association makes perfect sense. But every case that uses that language, including San Juan, dealt with a single funded service. San Juan was water. Some of these cases, very few of them, involve sewer at all. Almost all of them are water cases. One of the cases does involve sewer service, and it's the City of Lebanon case, where that was the protected service. That was the one that had the loan. The answer to that question is, when the statute is looked at, just like the district court below said, the article, the service, means something. It means the singular service. That comes also from the City of Lebanon case. That same paragraph that that you have a sewer system that is separate than the one that the loan was issued for, and the revenues from the water service in the Green Valley Special Utility District are pledged to repay that loan. The requirements of the statute and the sound reasons that Congress set this system up are protected by limiting those anti-competitive effects to the funded service. What do you do with the reference in the Bear Creek case to the word services, which is plural? I think it was unfortunate that it said that, because it doesn't come from the statute. And more importantly, if the court looks at the regulatory guidelines, which they make a passing reference to, and the district court below and our brief cover the regulatory framework that talks about how the loans are created and how they are funded, and it makes it very clear that it's the finance system that is subject to those limitations. We think it's appropriate to look at that sound statutory construction and that is the proper way to construct it. It doesn't make any sense, like your Honor's question, to apply these protections to something else. One of the reasons that we filed the appendix materials in this case was that the argument being made in their brief sounded like, well, there's two systems here and they're seamless and they're integrated and they're running and we're billing everybody the same. Their sewer system is a record materials, can we? Your Honor, they're... shouldn't we send it back for the district court to consider? I think the answer is no to that. I thank you for asking that question. There's no necessary summary judgment proof here that does anything. We believe on the face of their amended complaint, the fact that the funded service is only the water service is determinative. Secondarily, their reply brief concedes that they have a permit pending, they have bought some I'm merely saying that those things that are in the briefs and are properly before this court as a matter of judicial notice in our view, under the cases that we cite, merely say that where Congress authorized protections for a funded system and they have a proposed system that they want to bring online that is not funded, this statute can't reasonably be construed to protect that. There's nothing in the statute that leads to that conclusion. So you're saying we don't need to address the question of the integrated system because we don't have one? That's correct. I think that that's right. But I think that on the face of their amended complaint, the fact that it's not funded is final and it's fatal to their claim. And that's what the City of Lebanon case says. Let me ask you about that because we talked about with him, I had my mortgage on House A but not House B and all that. But the truth is when you go to apply for a loan, they want to know everything even though if your house, even if your house is worth $200,000 and only $100,000, they still want to know all your other debts and this, that and the other because if you go to in the tank on other stuff, it's going to affect the house. So why isn't that true here? Let's put aside the issue of the extra record evidence about whether they're in business or not. If their sewer system goes to tank, sorry, no pun intended. If that happens, then aren't you it out of business, thereby harming the purpose of this whole federal funding? I think that the court's answer there also lies in the regulatory framework that makes that clear. The federal government doesn't fund these loans without an analysis of their viability. The whole purpose of this system was is that funding is not generally available in the private sector or lending market. And so these rural associations need protection from competition because they're not highly favorable, you know, economic propositions and they get favorable loan funds. But the federal government makes that choice. There's nothing that prevents them from seeking a loan for their sewer service and then if they got one and they met the statutory criteria to have one, they would have the protection in the statute. That's the outcome in the City of Lebanon case. If you want it, go get it. They're entitled to do that. But there's nothing in this statute that says if I get a loan on my water system that I get to piggyback the protections against encroachment by the City of Cibolo on my sewer system that I plan to build in the future. And who knows whether or not they would qualify with only a proposed system for a loan, but the Congress set up a protection for loans. And this court's San Juan decision makes it very clear that it is indeed hand in glove. I'm protecting the association so they're viable and I'm doing it so that my loan gets repaid. What exactly do you propose to do? I mean, what exactly do you plan to install? The City's application to the PUC in Texas would allow the City to be the sewer service provider. They would continue to be the water service provider. Their loan, which was issued and financed on that basis, would be intact. We are not proposing any interference whatsoever. The case law and the very nice, favorable quotations that they're using in their arguments here today all come from cases that dealt with a single funded service. So every one of those high and mighty pronouncements about congressional purpose had to do with either a water system or a sewer system. And we don't contest them at all. Like I said as I started, San Juan, the San Juan case, North Alamo versus San Juan. Let's talk about a sewer system. What does that include? Is this just a runoff facility or do you treat it as wastewater? This is in the extra record materials, as they were referred to, from the PUC, the filing by the Green Valley SUD, that they acquired property to build a wastewater plant. They proposed to have a sewer collection system and collect wastewater and treat it. And that is all a proposal. They have a master plan to do it. They have a water system. You said that you're saying that you're saying the city proposes to put a sewer system in, but a sewer, if you stop without a sewer system, is a drainage program. But you're talking about a sewer system that also includes... Sanitary system. ...treating the water, this wastewater, then retreating the water itself? Household wastewater coming out of toilets. And what do you do with that wastewater that's been treated? Put it back into the Rio Cibolo, where the wastewater plant would be located, or into the Guadalupe River, depending on... I'm sorry, I didn't understand you. It gets picked up from the collection system, coming from houses and homes and apartments and everything else, through the wastewater treatment plant and back into one of the waterways, ultimately into the San Antonio River. The sewer system you describe is a reclamation of water. It is indeed. Why isn't that a similar system to water? Because we believe that the word similar system used in that same paragraph is similar to the one that was funded by the federal law. Yes, I understand, but why isn't it similar? In other words, the statute itself protects, gives an exclusive grant to the service that's provided and something more similar to. And when you say sewer, that's one thing, but when you describe it fully as a reclamation of the water, you capture the water that they are producing, and after it's been used, and then you turn it right back in and redo it. I forget what they call it, brown water or something, like a golf course. Certainly, I understand the court's question and I understand the logic that the water comes in here and it's clean and it goes out here and it's dirty and gets cleaned, put back in the creek. We believe the statute is talking about similar service because in the sentence it appears, it is saying that we are protecting this association from encroachment by a municipality with respect to any similar services. So I have funded this loan. I have allowed a water system. You mean they're protecting you for you putting in a water system? That's correct. You put in the water system. We're not going to let somebody else come in and bring the same or even a similar water system that competes with your project. Well, then the next question to that is whether a water system breaches reclamation. And we don't believe it does. I understand you don't, of course not, but why doesn't it? Because it's not the funded system. But you supply the water, and you reclaim water, and some of that water goes right back in those wells. Then going in the wells, it goes in the surface water? In the surface water. Well, back in the aquifer. Right. So you're just cycling the water. Right. Now, what the appellant is seeking to do is to say, based on language out of North Alamo, that once there's a Texas Certificate of Convenience and Necessity, even though they don't have a system, that they have the obligation and the right to have a system and to build it and so forth and so on. It's been many years since they got that. It's appeared in the briefs. I don't remember the year. I think it was maybe 05 or 06. So it's been quite a while. But North Alamo actually doesn't just say that. It also then says, after finding that a Certificate of Convenience and Necessity was dispositive of whether or not you had a service that was protected, the two elements are, do you have a federal loan? Yes. Do you have service? The court said, if with the CCN in Texas, you have service. But then they also said, let's look and see what the service really is. And they found that there were facilities, there were customers, it was adequate, nobody had ever asked for service and didn't get it, and they were capable of extending service. So North Alamo doesn't just say a CCN is the be-all and end-all. It says, a CCN for a service that actually is in existence and is adequate means that you meet the requirements for protection under this statute. We think that those considerations from San Juan, even though it only dealt with the water system, support the view that it's intended to be protecting the federally funded system. What is the incentive of the city to do what it proposes to do? They obviously want to do this for very good reasons. When cities annex personnel into their communities, they intend to serve them, they want to serve them, they want to have the sewer system, they want to have the sewer revenues. And as cities and areas grow and become more populated, the dynamics of low density in these rural water associations turns into higher density, and it becomes more viable for cities to extend services and make the numbers work. Doesn't the city have an obligation to do that once it has annexed? It does indeed. It has to have a service plan to perform those services like equal to or that is certainly correct. What is happening now in the Green Valley geographical area? What is now happening to the wastewater? Almost all of it is in septic systems, and I believe that some of that is manifested in the testimony of the SUD before the Public Utility Commission that's in the appendix. None of that's in the amended original complaint, but most of it is by septic system. Most of it, I'm sorry. Septic system? Septic tanks. Septic tanks, yes. Individual septic tanks. We believe that with the factual concessions that are in their brief about the proposed system, that to the extent that this court thought it was important that this additional revenue to support the federal loan, that's not present in this case. We don't think it's necessary. We think since it's not federally funded, it doesn't matter, but there's not some attempt by the city to steal the cream off of the customer base and take advantage of that. The statutory purpose that San Juan recognizes and holds up as a high principle is still intact. That these districts, once they get federal funding, can carry out their activities and cities can't come in and cherry pick their customer base. That's what the Bell Arthur case was talking about in a little bit different context. Once again, even though they're arguing that it solves this problem, it was only about the water system in that area. It wasn't about a combined system. And what they said was, when you have a federally funded loan and you have a water system, we're not going to let the city come in and say, well, you only spent that money over here, so we can come on the other side of your area and put our water over there. The elements come right straight out of your San Juan case. You have a federal loan and you have a service under that federal loan to provide those customers, so the city stays away. That's what will happen in the city of Cibolo and the Green Valley Special Utility District under what we think is the correct construction of the statute. Their water system remains intact for the full term of the federal loan. And in the meantime, if the Public Utility Commission decides that the better service provider under its legal consideration would be the city of Cibolo, then the city provides the sewer service because we're not interfering with their federal loan. Unless there are further questions, that concludes my argument. All right, thank you, Mr. Denton. Mr. Terrell, you've saved time for a vote. What happens if you win this lawsuit to these provisions of these annex systems, annex properties, in terms of their provision of sewer systems and water reclamation? Green Valley would continue to be, as it has been since 2005, under a state law obligation to provide continuous and adequate service to those areas. There was something that came up during... I want to focus on, stay with the point a minute about services and so forth. Council Abel expresses a distinct, describes in his view, a very distinct provision of services that's not cherry-picked and not reaching into it. I would like to hear you answer that. And if nothing happens, these annex cities, is it the case that you would provide the same services that they want to provide or not? Yes. And be crystal clear on this. They are absolutely cherry-picking. What they are proposing would be you'd have John Smith's house that would be getting water service from Green Valley and then wastewater service from the city. They are absolutely cherry-picking. They're wanting to take those best... What's happened in these annexed areas is that they're already there. I take it there are houses there and people are using water and have a sewer system. What's happening with those? It is a largely rural area that's outside of San Antonio, but it's urbanizing. And so subdivisions are coming that direction because... I'm familiar with some of the traffic problems on 281, but go ahead. Don't forget I-35 also. As those subdivisions, as it became clear to Green Valley that there were subdivisions coming and it wasn't just going to be isolated farmhouses with rural service, Green Valley went and secured this wastewater CCN back in 2005, which gave it an absolute mandatory duty under state law to serve. And I want to point this out because... I mean, it's not really serving them. Right now they all have septic tanks, which is fine. I mean, they're able to use their toilets and everything. That's great, but that's not really a sewer service. Okay. You have to separate out two things. The landowner has the right to use a septic tank if they want to. The question is, if a landowner makes a request for service, does the utility have an obligation to serve? And in this case, the answer is absolutely yes. How are they going to do that? They don't even have the infrastructure to do it. So if John Doe, who's had a septic tank for 20 years, now decides he'd like to have a sewer, how are you going to give it to him? Okay. Now understand, to answer this question, I'm going outside of the record evidence. Because of the way that they framed this on appeal, and to answer your question, I'll do that. If you go back to the 2006 master plan that Green Valley did, they cherry picked three pages out of a 721-page document. Green Valley has a very systematic approach, and they've been in the process of doing this for almost 10 years. They, of course, have known about that. They knew that Green Valley had the CCN. They waited over a decade before coming to cherry pick, again, just some of the very nibble around the edges to skim the cream or cherry pick, whatever analogy you want to use, to take those best areas, which is completely contrary to the policy. Those best areas being new subdivisions? Yes, with density, more users, more revenues. That's what cities do when they annex. Right. And that's why Congress said, no, you can't take the service area. That's why the federal policy that Congress set out in 1926B is so critically important. In those, what you call the cherry picked areas, the annexed areas, is your client now providing wastewater services? Yes, and your case in North Alamo speaks directly to this point. I'm asking about a fact in your case. I'm not talking about some other case. Is your utility providing wastewater services now in the area in question? Okay, the answer is yes. State law duty to provide service is legal equivalent to making service available. Is John Doe getting sewer service or not? Okay. From your company, not by some case law you are quote providing, but if I'm John Doe living anywhere in any of this Green Valley area, am I getting sewer service from you guys? All right. The answer is legally yes because of the CCN obligation. If you're asking whether there's a wastewater treatment plant. When I flush my toilet, I'm not interested in the law. I'm interested in where is it going? Is it going into a septic tank or is it going into some pipe that's going to take it somewhere? Septic tank. Okay, that's the question. All right, your time has expired. Thank you, Mr. Terrell. Your case is under submission. Next case, Lincoln versus Turner.